**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KORYON CUNNINGHAM,** | ] | |
| | ] | |
| **Plaintiff,** | ] | **Case No. _____** |
| | ] | |
| **vs.** | ] | |
| | ] | |
| **WN HOSPITALITY LLC d/b/a THE JOSEPH** | ] | |
| **NASHVILLE, WN HOSPITALITY EMPLOYER** | ] | |
| **LLC, PIZZUTI NASHVILLE HOTEL OWNER** | ] | |
| **LLC, WISCHERMANN PARTNERS, INC.,  and** | ] | |
| **WISCHERMANN HOSPITALITY EMPLOYER,** | ] | **JURY DEMAND** |
| **LLC,** | ] | |
| | ] | |
| **Defendants.** | ] | |

---

### COMPLAINT

---

Plaintiff Koryon Cunningham ("Mr. Cunningham"), by and through counsel, brings this Complaint against Defendants and alleges as follows:

### I.      INTRODUCTION

1. Mr. Cunningham brings this action against Defendants for violations of his rights protected by Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), and Title I of the Civil Rights Act of 1991 and Tennessee common law. Mr. Cunningham seeks to correct unlawful employment practices on the basis of his disability and to obtain redress for damages he suffered as a result of Defendants' unlawful actions. As stated with particularity below, Mr. Cunningham alleges that Defendants failed to engage in an ongoing interactive process and to provide a modified reasonable accommodation to him, a qualified individual with a disability,

1

during his employment, and discharged him because of his disability and in retaliation for his protected activities.

## II.    JURISDICTION & VENUE

2.  This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331.

3.  This Court also has supplemental jurisdiction over Mr. Cunningham's state law claim pursuant to 28 U.S.C. § 1367 because it is so related to the federal claims that they form part of the same case or controversy.

4.  The claims asserted in this action arose in Davidson County, Nashville, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

## III.    THE PARTIES

5.  Plaintiff Koryon Cunningham is an adult resident of Nashville, Davidson County, Tennessee, and is a citizen of the United States.

6.  At all relevant times, Mr. Cunningham was an "employee" of Defendants who together operate The Joseph Nashville, a luxury hotel. Defendants together are an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(2).

7.  Defendant WN Hospitality LLC is a Minnesota limited liability company and it may be served with process through its Tennessee registered agent: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

8.  Defendant WN Hospitality Employer LLC is a Minnesota limited liability company and it may be served with process through its Tennessee registered agent: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

9. Defendant Pizzuti Nashville Hotel Owner LLC is a Delaware limited liability company and it may be served with process through its Tennessee registered agent: Cogency Global, Inc., 992 Davidson Drive, Suite B, Nashville, TN 37205-1051.

10. Defendant Wischermann Partners, Inc. is a Minnesota corporation and it may be served with process through its Tennessee registered agent: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

11. Defendant Wischermann Hospitality Employer, LLC is a Minnesota limited liability company and it may be served with process through its Tennessee registered agent: CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

12. Defendants, together and individually, employ more than 500 employees.

13. Defendants shared or co-determined the matters governing the essential terms and conditions of Mr. Cunningham's employment; thus, Defendants together constitute a joint and/or integrated employer under the ADA.

## IV.    ADMINISTRATIVE PREREQUISITES

14. Mr. Cunningham has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000e. Notice of Right to Sue letters were issued by the U.S. Equal Employment Opportunity Commission on October 6, 2021, true and correct copies of which are collectively attached hereto as **Exhibit A**.

## V.    RELEVANT FACTS

15. Mr. Cunningham has been diagnosed with Irritable Bowel Syndrome ("IBS"), a chronic and painful long-life condition that substantially impairs his digestive system and substantially limits several of his major life activities when active, including, but not limited to, bowel function, concentrating, eating, and walking.

3

16. During an IBS flare up (sometimes referred to as an "IBS attack"), or in its unmitigated state, Mr. Cunningham experiences severe abdominal pain and sudden and unpredictable changes in bowel habits, including severe diarrhea.

17. IBS, in its unmitigated state and/or as suffered by Mr. Cunningham, is a disability as defined by the ADA, as amended.

18. The cause of IBS is not known and no cure exists at this time.

19. On or about September 17, 2020, Mr. Cunningham began working as a line cook for The Joseph Nashville, a Marriott-franchised hotel in downtown Nashville ("The Joseph").

20. Prior to The Joseph, he successfully worked for other Marriott hotels for over four years.

21. Mr. Cunningham performed his duties well, and he was qualified for his position with or without reasonable accommodation.

22. Due to his disability, Mr. Cunningham occasionally suffers from unpredictable and severe diarrhea.

23. During these episodes, he needs immediate access to a restroom.

24. Initially, Mr. Cunningham worked in the kitchen for Yolan, an Italian restaurant located on the 1st floor of The Joseph.

25. The hotel's only designated employee bathroom is also located on the 1st floor. It contains one toilet/stall and one urinal.

26. In or about late-September 2020, Mr. Cunningham informed his immediate supervisor, Head Chef Nick Chaskin ("Mr. Chaskin"), of his IBS and need for immediate bathroom access with little or no notice.

27. Mr. Chaskin orally approved Mr. Cunningham's accommodation request.

4

28. Mr. Chaskin is an exempt, salaried employee of The Joseph who manages all Yolan kitchen personnel, including making hiring and firing decisions and approving sick time and vacation requests.

29. Mr. Chaskin did not instruct Mr. Cunningham to submit an accommodation request to The Joseph's human resources office ("HR").

30. After approving Mr. Cunningham's request for accommodations, Mr. Chaskin informed several other supervisors about Mr. Cunningham's IBS and the approved bathroom-related accommodations.

31. For example, Mr. Chaskin informed Parks Wilson Hand, a supervisory-level, exempt chef who supervised Mr. Cunningham during morning shifts ("Mr. Hand"), about Mr. Cunningham's IBS and his need for IBS-related bathroom accommodations. *See* **Exhibit B, Sworn Declaration of Parks Wilson Hand**.

32. Mr. Hand does not recall The Joseph training its managers on how to handle requests for reasonable accommodations, including where to direct employees who request such accommodations. *Id.* **at ¶ 9.** Mr. Hand found this lack of ADA training unusual based on his prior work experiences in the restaurant industry. *Id.*

33. Mr. Cunningham's initial ADA accommodations were successful. Mr. Cunningham kept up with his work, had no performance issues or discipline, and addressed his IBS symptoms when needed by informing a supervisor of his need to use the restroom.

34. Three months after his accommodations were approved, in December 2020, Mr. Cunningham began working in the hotel's 8th floor banquets kitchen.

35. The 8th floor consists of a banquet hall, kitchen, and several guest restrooms. There are no guest rooms or employee bathrooms on the 8th floor.

5

36. Defendants have a company policy that prohibits employees from using guest restrooms.

37. The policy's purpose is to prevent "commingling" between hotel employees and guests.

38. At all relevant times to this action, The Joseph's 8th floor had no hotel guests because, due to COVID-19, no or limited banquet events were taking place and there are no guest rooms located on the 8th floor.

39. On or about December 30, 2020, Mr. Cunningham was forced to use a guest bathroom in a commons area near the banquet hall on the 8th floor due to an IBS attack.

40. Mr. Cunningham did not have time to travel down to the 1st floor bathroom when the flare up occurred due to the sudden onset of his symptoms.

41. For Mr. Cunningham, waiting for the employee elevator or running down numerous flights of stairs while suffering from IBS-induced diarrhea was not feasible.

42. After Mr. Cunningham used the family guest bathroom, The Joseph's General Manager, Rajesh Radke ("Mr. Radke"), approached Mr. Cunningham and asked who his "chef" was.

43. Mr. Cunningham stated his "chef" was Banquet Chef Steve Scheler ("Mr. Scheler").

44. Mr. Scheler is an exempt, supervisory-level employee who supervises all banquets kitchen employees.

45. Mr. Cunningham truthfully admitted that he used the family guest bathroom.

46. Mr. Radke forced Mr. Cunningham and Mr. Scheler to follow him into the family guest bathroom.

47. In the family bathroom, Mr. Radke accused Mr. Cunningham of leaving the toilet bowl unclean, even though the toilet is designed to automatically flush.

48. To the extent there was any "mess" in the toilet, it was a physical manifestation of Mr. Cunningham's disability.

6

49. Mr. Cunningham attempted to explain to Mr. Radke that he has IBS.

50. However, Mr. Radke would not let him get a word in, and Mr. Scheler signaled to Mr. Cunningham not to talk.  Mr. Cunningham followed his supervisor's direction.

51. When Mr. Radke left, and immediately upon entering the banquets kitchen, Mr. Scheler asked Mr. Cunningham what that incident was all about.

52. Mr. Cunningham explained to Mr. Scheler that he has "a medical condition, IBS," and needed immediate bathroom access in the case of an emergency.

53. Mr. Scheler responded, "I'll figure something out."

54. Mr. Scheler did not instruct Mr. Cunningham to submit an accommodation request to HR.

55. Mr. Cunningham never heard back from Mr. Scheler, who took several personal days off with the accommodation request pending.

56. On January 4, 2021, Mr. Cunningham had another IBS attack.

57. He quickly hurried toward a secluded 8th floor bathroom but had an accident before he could reach it. Mr. Cunningham was forced to discard his underwear.

58. This particular 8th floor guest bathroom is secluded and is near the banquets kitchen.

59. Banquets kitchen employees have been allowed to use this bathroom in the past.

60. Once inside the bathroom, Mr. Cunningham became emotional. This was the latest unfortunate event caused by his IBS. As a kid, he had to turn down social invites and miss certain events if a bathroom was not nearby. Now, he found himself in another deeply embarrassing situation.

61. Mr. Cunningham began to discretely use the toilet and had to use paper towels to properly clean himself.

62. At this time, Mr. Radke entered the bathroom along with the hotel's head engineer, Cale Burch ("Mr. Burch").

7

63. Mr. Radke forced his way into Mr. Cunningham's locked bathroom stall, **_after_** Mr. Cunningham announced his presence.

64. Mr. Cunningham was shocked, humiliated, and angered by this dehumanizing invasion of his privacy.

65. Mr. Burch later confirmed to Mr. Cunningham that the stall door was locked before Mr. Radke's entry. He also explained that the bathroom stalls have built-in emergency lock releases near the bottom of the doors, which Mr. Radke used to barge in on Mr. Cunningham.

66. Upon entering the bathroom stall, Mr. Radke yelled at Mr. Cunningham for using one of the guest bathrooms again.

67. While still standing inside the stall, Mr. Cunningham told Mr. Radke that he has "a medical condition, IBS" and asked what he was expected to do in case of an emergency.

68. Mr. Radke responded, "I don't care."

69. Mr. Cunningham was then forced by Mr. Radke to clean the toilet in front of him and Mr. Burch.

70. Mr. Cunningham was not given personal protective equipment or proper cleaning supplies.

71. Mr. Radke then became upset because the toilet was clogged despite the fact that he had barged in while the toilet was still in use.

72. Further, even if the toilet was in a messy state it was **_because of_** Mr. Cunningham's disability. Any "mess" was a physical manifestation of a primary symptom of his disability – severe diarrhea – the sudden onset of which was the reason why he needed an accommodation in the first place.

73. Mr. Radke stated that he and Mr. Cunningham would talk about this incident later.

74. About 10 minutes later, Mr. Cunningham was escorted out of the banquets kitchen by The Joseph's Human Resources Director, Daniel Guerrero ("Mr. Guerrero"), and hotel security officer Dustin Napier.

75. While waiting for the elevator, Mr. Cunningham asked Mr. Guerrero what was going on.

76. Mr. Guerrero responded that he was going to save Mr. Cunningham the trip to his office and that they were terminating him.

77. Mr. Cunningham was devastated and told Mr. Guerrero that he has IBS.

78. Mr. Guerrero confirmed he knew that "IBS" stood for Irritable Bowel Syndrome.

79. "You're going to fire me because I have a disability!?," Mr. Cunningham pleaded.

80. Mr. Guerrero stated that the hotel has a bathroom policy that Mr. Cunningham violated.

81. Mr. Cunningham then asked Mr. Guerrero what he expected him to do if he had an emergency.

82. "Use the stairs," Mr. Guerrero replied.

83. Using the 1st floor bathroom, by elevator or stairs, was not feasible for Mr. Cunningham.

84. Later, Mr. Guerrero confirmed in a written statement that Mr. Cunningham informed him of his IBS.

85. Defendants terminated Mr. Cunningham for disability-related conduct.

86. During the relevant time period, Defendants' bathroom policy was unrelated to business necessity.

87. Due to the COVID-19 pandemic and the empty 8th floor, there was no risk of "comingling" between Mr. Cunningham and hotel guests during the relevant time period.

88. Defendants' alleged reason for terminating Mr. Cunningham was his violation of company policy, but Mr. Cunningham violated the bathroom policy out of medical necessity caused by his IBS attacks.

89. Mr. Cunningham reasonably believed he needed to act as he did to avoid soiling himself (and on one occasion this occurred despite his best efforts).

90. Mr. Cunningham could have avoided violating the company policy if Defendants provided a reasonable accommodation, as Mr. Cunningham requested from Mr. Chaskin, Mr. Scheler, and Mr. Radke.

91. Even more, Defendants' bathroom policy was selectively enforced and non-disabled employees were not terminated for similar violations.

92. After the termination, Koryon cried in his car.

93. He did not know what he was going to do. He did not know how he would take care of his young son or pay for the car note he recently obtained.

94. These humiliating and degrading events would not have occurred but for Mr. Cunningham's disability and Defendant's failure to engage in an ongoing interactive process.

95. Defendants had actual knowledge of his IBS *months* before he began working on the 8th floor.

96. Mr. Radke knew or should have known of Mr. Cunningham's IBS before any termination decision was made.

97. Defendants failed to engage in an interactive process and failed to provide Mr. Cunningham with reasonable accommodations, i.e., allow him to use one of the several 8th floor restrooms in the event of an emergency and/or modifying the hotel's bathroom policy as applied to Mr. Cunningham.

10

98. The family-designated restroom on the 8th floor was single occupancy and did not carry a risk of comingling.

99. At the time of any bathroom policy violations, Defendants were under an ongoing duty to engage in an interactive process with Mr. Cunningham about accommodations for his IBS.

100. Upon information and belief, Defendants posted a job opening for Mr. Cunningham's position and filled it with an individual who does not have a disability.

101. Based on these actions, Defendants have violated the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 ("ADA"), *et seq.*, and Tennessee common law for intentional and negligent infliction of emotional distress.

102. As a result of his termination, Mr. Cunningham has suffered and continues to suffer loss of past and future income and benefits, mental and emotional distress, anxiety, humiliation, and embarrassment.

## VI. CAUSES OF ACTION

### A. Failure to Accommodate and Failure to Engage in the Interactive Process

103. Mr. Cunningham re-alleges and incorporates the above paragraphs.

104. Mr. Cunningham is a qualified individual with a disability, as defined by the ADA, 42 U.S.C. § 12102, 12111, as amended.

105. Defendants could have provided Mr. Cunningham with a reasonable accommodation to his known disability without imposing an undue hardship on the conduct of their business.

106. After Mr. Cunningham's request for accommodation, Defendants failed to engage Mr. Cunningham in an interactive process to identify a reasonable accommodation to his known disability.

107. Defendants are responsible for the breakdown in the interactive process because of, *inter alia*, their failure to train supervisors on how to handle accommodation requests.

108. Defendants' failure to accommodate Mr. Cunningham constitutes disability discrimination, in violation of the ADA.

109. Defendants discriminated against Mr. Cunningham intentionally. Defendants acted maliciously and/or with reckless indifference to Mr. Cunningham's rights.

## B.  Discriminatory Discharge

110. Mr. Cunningham re-alleges and incorporates the foregoing paragraphs.

111. Defendants discharged Mr. Cunningham on the basis of his disability, in violation of the ADA.

112. Defendants discriminated against Mr. Cunningham intentionally. Defendants acted maliciously and/or with reckless indifference to Mr. Cunningham's rights.

## C. Retaliation

113. Mr. Cunningham re-alleges and incorporates the foregoing paragraphs.

114. Defendants discharged Mr. Cunningham in retaliation for his requests for reasonable accommodation, assertion of his rights, and opposition to illegal discrimination.

115. Defendants' actions constitute unlawful retaliation in violation of the ADA.

116. Defendants discriminated against Mr. Cunningham intentionally. Defendants acted maliciously and/or with reckless indifference to Mr. Cunningham's rights.

## D. Intentional and/or Negligent Infliction of Emotional Distress

117. Mr. Cunningham re-alleges and incorporates the foregoing paragraphs.

118. Defendants' conduct was (1) intentional or reckless; (2) so outrageous that it is not tolerated by civilized society; and (3) resulted in serious mental injury to Mr. Cunningham.

119. Defendants are vicariously liable for the actions of their managing agents, including, but not limited to, Mr. Radke.

120. As a direct and proximate result of Defendants' unlawful acts, Mr. Cunningham has been unable to cope with the mental stress caused by the circumstances leading up to his dehumanizing termination.

121. Specifically, Mr. Cunningham has developed psychological manifestations of emotional distress, including, but not limited to, depression, anxiety, shame, loss of enjoyment of life, humiliation, embarrassment, and anger.

122. Defendants had a duty to not trespass and invade the reasonable expectation of privacy of Mr. Cunningham in the locked bathroom stall.

123. Defendants breached this duty and caused Mr. Cunningham to develop physical manifestations of emotional distress.

124. As a result, Mr. Cunningham is entitled to recover damages and any other legal and equitable relief to which he may be entitled.

### VII. PRAYER FOR RELIEF

125. **WHEREFORE**, Mr. Cunningham prays that he be granted the following relief:

    A. Enter judgment against Defendants, declare that the actions of Defendants violate the ADA, and enjoin Defendants from further discriminatory or retaliatory practices;

    B. Order Defendants to pay Mr. Cunningham back pay, lost benefits, and other pecuniary losses proximately caused by Defendants' unlawful conduct, including an appropriate amount to offset increased tax consequences of any lump sum payment;

    C. Order Defendants to pay Mr. Cunningham front pay and the value of future lost benefits; or in the alternative, order that Mr. Cunningham be reinstated to his position

13

with Defendants;

D. Order Defendants to pay  Mr. Cunningham compensatory damages in an amount to be determined by a jury;

E. Order Defendants to pay Mr. Cunningham punitive damages in an amount to be determined by a jury;

F. Order Defendants to pay all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees and reasonable attorney's fees as allowed by law;

G. Grant Mr. Cunningham all such further relief as he is entitled to under law and/or as the Court deems just and proper; and

H. Mr. Cunningham requests a jury trial in this cause.


Respectfully submitted,


s/ Curt M. Masker
Curt M. Masker, BPR No. 037594
THE MASKER FIRM
810 Dominican Drive, Suite 314
Nashville, TN 37228
Telephone: (615) 270-2098
Facsimile:  (615) 821-0632
curt@maskerfirm.com

*Counsel for Mr. Cunningham*